E. F. PRITCHARD and wife v. FANNIE SANDERSON, Ex'rx, and others.

*Injunction—Court directs sale under trust deed, when.*

An injunction to restrain the sale of land conveyed in a deed to secure a debt will be granted under the equitable jurisdiction of the court, where the parties dealing together have settled their accounts and a note secured by the deed given for the estimated balance, and where fraud is alleged to have been practiced upon the mortgagor or trustor in such settlement.   A sale by the trustee of the property conveyed will not be permitted until the amount due is ascertained under the direction of the court.

(*Kornegay* v. *Spicer*, 76 N. C., 95; *Mosby* v. *Hodge, Ib.*, 387; *Capehart* v. *Biggs*, 77 N. C., 261; *Purnell* v. *Vaughan, Ib.*, 268; *Brinegar* v.

*Chaffin*, 3 Dev., 108 ; *Hays* v. *Askew*, 5 Jones, 63 ; *Wesson* v. *Stephens*, 2 Ired. Eq., 557, cited and approved.)

MOTION by defendant to vacate an injunction heard at Chambers on the 17th day of September, 1880, before *Schenck, J.*

The motion was made in an action pending in Pasquotank superior court in which an injunction had been granted on the first day of May, 1880. The facts are as follows: At a sale made by George W. Charles, administrator of Daniel Richardson, under a license of the proper court therefor on the 6th of July, 1867, the feme plaintiff purchased a tract of land belonging to the intestate and known as the "Richardson farm" for $3,627, and the title was retained as a security for the payment of said sum.

On the 20th of May, 1872, upon a settlement between the parties, three notes were executed by the plaintiffs for the estimated residue of the purchase money, two in the sum of $1,209, each bearing interest from the day of sale, and one in the sum of $251.03, bearing interest from May 10th, 1869; and the land was then conveyed by the said Charles to the said feme plaintiff. At the same time the land was reconveyed by the plaintiffs to William F. Martin in trust to secure the said notes.

On the 6th of May, 1876, portions of the land having been sold to different persons with consent of all interested therein, and the proceeds applied in reduction of the indebtedness, another settlement was made and a new note given for $2,054, the estimated balance of purchase money remaining unpaid, and the residue of the land reconveyed to the same trustee for its security.

On the 1st of January, 1877, the feme plaintiff bought also of the testator, Charles, (who died in the latter part of the year 1877, leaving a will in which the defendant Fannie was appointed executrix) a lot in the town of Elizabeth

City, for the sum of $1,050, for which the plaintiffs gave their note, and on obtaining title reconveyed the lot and their equitable estate in the other land to the said Martin to secure the payment thereof.

The defendant, C. W. Grandy (substituted as trustee in place of the former who had died) in pursuance of directions from the defendant Fannie, executrix of said Charles, her former husband, and the defendant Thos. L. Sanderson whom she had since married, had advertised and was about to sell the said lands conveyed in the last mentioned deeds in trust, when the plaintiffs commenced their action to arrest further proceedings for a sale until an account could be taken and the amount due ascertained, and obtained a temporary restraining order before *Graves, J.*, to this effect. In their complaint used as an affidavit they allege that the prior settlements were made and the notes executed upon estimates and calculations made by the testator alone, which they accepted and acted on as correct, in full assurance that all proper credits were allowed them, and with entire confidence in his integrity and accuracy in the transactions; that they were misled, deceived, and defrauded by him in said matters, and instead of being indebted in May, 1876, for any of the original purchase money for the farm, they had overpaid it, and a considerable excess was due to them and should have been applied to the indebtedness incurred in the purchase of the town lot; and they annex as an exhibit a detailed statement of their own indebtedness and the successive payments made, in date and amount, from which there appears to be due the executrix on the first of January, 1880, the sum of $440.58, which they offer to pay in discharge of the incumbrance upon the lands.

The executrix in her answer, used as a counter-affidavit upon the motion to vacate the restraining order, without professing to have personal knowledge of the facts alleged outside of what is contained in the deeds and notes them-

selves, declares her belief in the correctness of the testator's computations, and that all proper credits were allowed the plaintiffs in arriving at the result, and that upon a statement of the account in an accompanying exhibit, there is due to the testator the sum of $3,306 73. She also denies, upon information and knowledge of her husband's business habits and competency and her confidence in his strict integrity, the imputations made of fraud and deceit.

Thereupon the judge continued the injunction to the hearing upon the payment into court in thirty days by plaintiffs of the sum admitted to be due the defendants, and from this order the defendants appealed.

No counsel for plaintiffs.
*Mr. C. W. Grandy*, for defendants.

SMITH, C. J. It is unnecessary to consider in detail the allegations and denials reciprocally made in determining the point arising on the appeal. Nor can we receive as evidence the unsworn answers put in by the other defendants. On hearing the motion, His Honor ruled that if the plaintiffs within a limited period paid into the office the sum admitted to be due with interest from January 1st, 1880, the injunction should be continued to the final hearing, and if they failed, it should stand dissolved, and the trustee should proceed to sell the lands. From this order the defendants appeal.

It is conceded in the argument for the appellants that the ruling below is fully sustained by the adjudications in *Kornegay* v. *Spicer*, 76 N. C., 95; *Mosby* v. *Hodge, Ib.,* 387, and *Capehart* v. *Biggs*, 77 N. C., 261; unless this case is distinguishable in some essential feature from those. The practice where there is a controversy as to the sum due under the mortgage or deed in trust is thus declared by PEARSON, C. J., in *Mosby* v. *Hodge*: "The exercise of the power (of sale)

is only allowed in plain cases when there is no complication and no controversy as to the amount due upon the mortgage debt, and the power is given merely to avoid the expense of foreclosing the mortgage by action; but where there is such complication and controversy, the court will interfere and require the foreclosure to be made under the direction of the court after the controverted matters have been adjusted and the balance due is fixed; so that the property may be brought to sale when purchasers will be assured of a title, and not be deterred by any idea that they are buying a law suit." To same effect is *Purnell* v. *Vaughan,* 77 N. C., 268.

The distinction attempted to be drawn is, that the full settlement had between the parties in May, 1872, and the execution of a new note for the amount then admitted to be due, with the recitals in the deed made to secure it, concludes all inquiry into antecedent matters, and operates as an estoppel upon the plaintiffs and determines finally what was then due; and as the alleged subsequent payments are not disputed, the indebtedness is but a matter of arithmetical calculation, requiring no reference and no delay. Undoubtedly at law such estoppel will rise, and so the cases cited decide. *Brinegar* v. *Chaffin,* 3 Dev., 108; *Hays* v. *Askew,* 5 Jones, 63. But in equity the rule is otherwise, and deceit and fraud superinducing the execution of a deed may be inquired into to defeat its operation and relieve the deluded and injured party from its obligation. This is one of the most valuable functions of a court of equity, and perhaps more often called into exercise than any other. The principle is illustrated in *Wesson* v. *Stephens,* 2 Ired. Eq., 557, and we deem further references needless.

Besides the reason given by the late chief justice for the rule, it may be added that the mortgagor ought to know definitely what sum he is required to pay and have an opportunity to redeem without a sale. There is in the present

case a wide discrepancy in the estimates made by the parties as to the amount of the secured debt, and this controversy ought to be decided before a sale is permitted. We do not undertake to pass upon its merits, or say that the plaintiffs can successfully impeach the settlements relied on by the executrix, but merely, that they ought to have an opportunity to do so, and meanwhile the sale should be suspended. The ruling of the judge below is quite as favorable to the defendants as they have a right to ask, and in our opinion is obnoxious to no just complaint from them.

We therefore declare there is no error in the interlocutory judgment rendered, and this will be certified that the cause may proceed in the court below.

No error.                                   Affirmed.