J. B. BRIDGERS and wife v. W. H. MORRIS & SONS.

*Injunction—Foreclosure Sale—Mortgage.*

1. An injunction will be granted to postpone a sale of land by a mortgagee under the power contained in the deed, until the hearing of the case, where the affidavits show there is a controversy as to the amount due, arising out of numerous business transactions between the parties; and in such case it was proper in the court to make the restraining order conditional upon the mortgagor's executing a bond with justification to indemnify the mortgagee.

2. It is not necessary to insert, in a mortgage deed, a provision for giving notice to a mortgagor of an intended sale under a power contained in the deed, in advance of the advertisement. (*Capehart* v. *Biggs*, 77 N. C., 261, overruled as to this point).

(*Mosby* v. *Hodge*, 76 N. C., 387 ; *Kornegay* v. *Spicer*, *Ib.*, 95 ; *McCorkle* v. *Brem*, *Ib.*, 407, cited and approved).

MOTION by plaintiff for injunction in a suit pending in NORTHAMPTON Superior Court, heard at Chambers in .Tarboro on August 3d, 1883, before *Philips, J.*

The court granted the motion and the defendants appealed.

*Mr. R. B. Peebles,* for plaintiffs.
*Mr. W. C. Bowen,* for defendants.

SMITH, C. J. The plaintiffs, J. B. Bridgers and wife, on December 15th, 1880, conveyed by mortgage deed to the defendants, in their partnership name of W. H. Morris & Sons, a tract of land, described as containing one hundred acres, with condition to be void on payment at maturity of a bond for six hundred dollars, executed to said firm on the same day, and payable on January 10th, 1883, with interest from date at the rate of eight per cent. per annum, and vesting a power in the mortgagees of making sale in case of default.

In January, 1882, the plaintiffs executed a second mortgage deed to the defendants for a lot, with store-house thereon and the goods in it, and two tracts of land, designating them by name, on condition to become void if the mortgagors should at maturity discharge a debt due by them on their bond given .to the defendants at the same date for fourteen hundred dollars, due on January 1st, 1883, with similar provisions for a sale in default of payment.

The defendants rendered an account of their dealings with the plaintiff J. B. Bridgers to him, showing to be due them on December 30th, 1882, a balance of $2,321.13, and, the latter failing to provide for the payment, they proceeded under the provisions of the mortgages, to advertise a sale of said property on the first Monday in August following, to satisfy the mortgage debts. Thereupon the plaintiffs commenced the present suit on June 26th, 1883, and, using their sworn complaint. as an affidavit, applied for and obtained from the judge a temporary restraining order to operate until an application after notice could be

3

heard for an interlocutory injunction to be in force until an account could be taken, the true indebtedness of plaintiffs ascertained, and the cause finally heard and determined.

The application was heard upon the complaint answer and accompanying exhibits, full and voluminous, at chambers, before the judge, on August 3d, 1883, both parties being represented by counsel, when the following order was made:

"Upon the reading of the complaint, answer and exhibits, it is considered by the court: That upon the filing of a bond in the penal sum of one thousand dollars payable to defendants, with two or more sureties, to be justified before the clerk of the superior court, to indemnify the defendants in the premises, the restraining order in the cause is continued to the hearing—this to be given within ten days; in default thereof, the defendants, after advertising for thirty days, have leave to sell according to the provisions of the mortgages."

The plaintiffs allege the omission of divers credits to which they are entitled, and which are not entered in the account rendered, which would greatly reduce the amount claimed, while the defendants deny their imputations, and, with elaborate explanations, supported by numerous letters from the plaintiff, insist that every proper credit has been allowed, and the full amount claimed is due them.

Without going into a minute examination of the proofs offered, it is sufficient to say that there have been many business transactions between the parties, and it is a proper case to interpose and suspend the proposed sale by the creditor mortgagees, until the account can be investigated and the sum still due be ascertained, before a sale is made to discharge it. The delay cannot, so far as we see, operate to the injury of the mortgagees; and if it could, an ample indemnity is provided in the order itself before the injunction shall issue.

The ruling of the court is in accordance with several recent adjudications, and furnishes no just ground of complaint to the appellants, guarded as it is by the requirement of adequate secur-

ity for the protection of the defendants against loss or damage from the delay. To some of these cases we shall refer in passing upon the appeal.

In *Mosby* v. *Hodge*, 76 N. C., 387, the motion was to dissolve an injunction issued to restrain a sale by the mortgagee, to pay the secured debt, which was allowed in the superior court, and on appeal the ruling reversed. The Chief-Justice who delivered the opinion, after stating that the exercise of such powers by the mortgagee acting for his own benefit was looked upon "with extreme jealousy," proceeds to say: "The exercise of the power is only allowed in plain cases where there is *no complication and no controversy* as to the amount due upon the mortgage debt, and the power is given merely to avoid the expense of foreclosing the mortgage by action: but that where there is such complication and controversy, the court will interfere and require the foreclosure to be made under the direction of the court after all the controverted matters have been adjusted and the balance due is fixed, so that," &c.

In *Kornegay* v. *Spicer*, decided at the same term upon a similar motion, the Chief-Justice uses this language: "The idea of allowing the mortgagee to foreclose the equity of redemption, by a sale made by himself, instead of a decree for foreclosure and a sale made under the order of the court, was yielded to, after great hesitation, on the ground that in a plain case, when the mortgage debt was agreed on and nothing was to be done except to sell the land, it would be a useless expense to force the parties to come into equity, when *there were no equities to be adjusted,* and the mortgagor might be reasonably assumed to have agreed to let a sale be made after he should be in default."

The same rule was affirmed and enforced in *Capehart* v. *Biggs,* 77 N. C., 261, upon the like state of facts, and the mortgagees were forbidden to make sale until the disputed account could be investigated and the indebtedness determined.

We are unable to find in the present case any features essentially distinguishing it from those cited, and exempting it from

the general proposition there established. Here is a controversy as to what is due, and though the evidence may predominate, when examined, in favor of the indebtedness claimed, as argued for the defendant, it cannot be expected that the court, upon a preliminary order, such as this, shall go into a full investigation and decide upon the amount of the indebtedness, instead of leaving this to be settled upon the final hearing and disposition of the cause—more especially where provision is made against any injurious consequences that may arise from the suspension of the sale. *McCorkle* v. *Brem*, 76 N. C., 407.

In our reference to *Capehart* v. *Biggs, supra,* for another purpose, we do not wish our silence to be misconstrued as giving sanction to the suggestion of the Chief-Justice in reference to an insertion in a mortgage deed that vests a power of sale in the mortgagee, of a provision for giving notice to the mortgagor of an intended sale in advance of the advertisement. The default authorizes the exercise of the power, and we see no reason for imposing restraints or conditions which the parties themselves did not see fit to introduce into the instrument, and thus impair the value of these securities for the creditor, whose merit chiefly consists in the promptness and small expense with which they are rendered available in enforcing payment.

There is no error and this will be certified.

No error.                                              Affirmed.