W. J. ALFORD v. B. M. MOORE.

(Filed 5 March, 1913.)

1. **Trusts and Trustees — Mortgages — Transactions — Fraud—Presumptions—Rebuttal—Burden of Proof.**

   The presumption of fraud arising from a transaction between a mortgagor and mortgagee whereby the latter has the former to reconvey the mortgaged lands, disappears when it is shown, with the burden on the mortgagee, that the transaction was fair and honest, free from undue influence, and that the mortgagee assented thereto at the request of the mortgagor, and did not use his power and position to drive an unfair bargain.

2. **Issues Tendered and Refused—Appeal and Error.**

   An issue tendered by a party litigant which is not sufficiently broad and comprehensive to be determinative, and is embraced in an issue submitted, is properly refused.

3. **Issues—Admissions—Appeal and Error.**
    An issue which is covered by an admission of the parties to an action is immaterial, and when tendered, its refusal is not error.

4. **Instructions—Assuming Facts—Appeal and Error.**
    A requested instruction which assumes any fact at issue to have been proved should be refused.

5. **Issues — Rents and Profits — Ownership of Lands—Appeal and Error.**
    An issue tendered as to rents and profits of lands in dispute becomes immaterial when the jury, under a correct instruction, and from the evidence, has found the title thereof to be in the adverse party against whom they are claimed.

APPEAL by plaintiff from *Daniels, J.,* at October Term, 1912, of FRANKLIN.

This action was brought to enjoin the sale of a tract of land under the power contained in a deed of trust, to cancel certain other deeds, for an accounting, and for the redemption of the land, this being the relief appropriate in the case under the general prayer in the complaint. Plaintiff had been the tenant of the defendant, B. M. Moore, for many years prior to 1 January, 1895, of the land in controversy, when it was agreed between them that Alford should purchase the land on easy terms. Defendant then conveyed to him the tract of land, containing 687 acres, and certain personal property, for $9,000, of which $8,000 was the price of the land. Alford was allowed forty-one years to pay the purchase money, he being required to pay only the interest for the first five years and thereafter the interest and $250 on the principal. No cash payment was made. Alford executed a deed of trust on the land to secure the purchase money. Plaintiff having paid practically nothing on the principal of the debt, he requested Moore to take the land back and convey to him 155 acres of the tract, on a credit of ten years, for $3,412. Deeds were executed accordingly, plaintiff reconveying to Moore the original tract of 687 acres, and Moore conveying to him the 145 acres, but the transaction was not then consummated, as plaintiff had before conveyed to his brother, P. H. Alford, a one-half interest in the 687 acres, and the latter would not consent to release his interest in it to Moore,

whereupon, at the request of plaintiff, the land was advertised under the power of sale, but before the sale of the land, P. H. Alford agreed to ratify the reconveyance to Moore for $210, which was paid. Plaintiff executed a deed of trust on the 145 acres to secure the purchase money agreed to be paid for that tract, and all the deeds were registered and the advertisement of the sale was withdrawn. This was done on 6 September, 1905. About six years later, plaintiff not having paid any of the principal of the new debt and only a small part of the interest, the tract of 145 acres was advertised for sale by the trustee, when plaintiff commenced this action and prayed that the sale be enjoined and for general relief, as above stated.

The court submitted to the jury the following issue: "Was the transaction of 6 September, 1905, whereby the trustee and W. J. Alford conveyed to defendant Moore the entire tract of land, and Moore conveyed to the plaintiff Alford 145 acres, unfair and oppressive?" to which the jury answered "No."

The plaintiff tendered the following issues, which the court refused to submit: "(1) Was the consideration for the deed of 6 September, 1905, a full and fair price for the property? (2) What sum is now due to the defendant, Ben M. Moore, upon the purchase price for said land? (3) What is the annual rental value of the mill and farm other than the 145 acres for the last seven years?" He also requested the court to charge the jury that, upon all the evidence, if believed, they should answer the issue "Yes." This prayer was refused.

The judge charged the jury as follows: "It appears in this case that the plaintiff, at the time he bought the 687-acre tract, paid nothing on the purchase price, and up to September, 1905, had not reduced the amount due. Therefore, if the jury shall find that at the expiration of the ten years the plaintiff went to the defendant Moore and asked him to take the land back and cancel the debt and sell him a smaller tract, and that in pursuance of this request by plaintiff, the defendant Moore, without fraud or oppression, agreed to take back this 687 acres and cancel the debt, amounting to more than the purchase price, and that the debt then due was a full and reasonable value, and he further agreed to sell him 145 acres on ten years time—if

you shall find these as facts, and that in pursuance of the request of plaintiff, and without any coercion on the part of Moore, this agreement was carried out, then there would be nothing unfair in the transaction, and you will answer the issue 'No.'"

Judgment was entered for the defendant upon the verdict, and the plaintiff appealed.

*W. M. Person and T. T. Hicks for plaintiff.*

*Bickett, White & Malone, Spruill & Holden, and W. H. Yarborough for defendant.*

WALKER, J., after stating the case: The testimony in this case is very voluminous, covering more than one hundred pages of the record. We have examined it carefully and have concluded that the judge might well have charged the jury that if, therefrom, they found the facts to be as stated by the witnesses, their verdict should be for the defendant, provided he paid full value for the land. But surely the plaintiff cannot complain that the evidence was submitted to the jury under the instructions set out in the case. The jury have found that there was no coercion or undue influence by the defendant, B. M. Moore; that the amount paid by him for the land in the transaction of 6 September, 1905, was the full and reasonable value thereof; that the reconveyance was made to the defendant, not by the use of any influence by him upon the plaintiff, but at the latter's request, and that the plaintiff had paid nothing on the purchase money. The court placed the burden upon the defendant to satisfy the jury that he took no advantage of his position as mortgagee to repurchase the land, and that the transaction in which he acquired it was *bona fide* and free from coercion, and that he paid full and fair value for the land.

The law governing this case has been firmly and finally settled by *McLeod v. Bullard,* 84 N. C., 516, in which the rule, as formerly adopted in *Whitehead v. Hellen,* 76 N. C., 99, is thus stated: "Courts of equity look with jealousy upon all dealings between trustees and *cestuis que trustent;* and if the mortgagor had by deed released his equity of redemption to his mortgagee, we should have required the purchaser to take the burden of

161—25

proof and satisfy us that the man whom he had in his power, manacled and fettered, had without undue influence and for a fair consideration released his right to redeem." *Lea v. Pearce,* 68 N. C., 76; Bigelow on Fraud (Ed. of 1890), pp. 261 and 295. In *Smith v. Moore,* 142 N. C., at p. 296, speaking of this principle of equity, the Court said: "When a party, complaining of a particular transaction, such as a gift, sale, or contract, has· shown to the court the existence of a fiduciary or a confidential relation between himself and the defendant, and that the defendant occupied the position of trust or confidence therein, the law raises a suspicion, or, it is often said, a presumption of fraud—a suspicion or presumption, arising as matter of law, that the transaction brought to the notice of the court was effected by fraud, or, what comes to much the same thing, undue influence, by reason of his occupying a position affording him peculiar opportunities for taking advantage of the complaining party. Having special facilities for committing fraud upon the party whose interests have been intrusted to him, the law, looking to the frailty of human nature, requires the party in the superior situation to show that his action has been honest and honorable. 1 Bigelow on Fraud, p. 261 *et seq.* This presumption is raised, where there have been dealings between the parties, because of the advantage which the situation of the parties respectively gives to one over the other. The doctrine rests on the idea, not that there actually was, but that there may have been fraud, and an artificial effect is given to the fiduciary relation beyond its natural tendency to produce belief of the fact that fraud really existed. *Lee v. Pearce, supra."* Numerous cases in this Court, decided since *McLeod v. Bullard,* have followed that case and applied the rule. *Brown v. Mitchell,* 102 N. C., 347. As the jury have found that the transaction was fair and honest and actually free from the exercise of any undue influence, and especially as it appears that defendant did not· use his power and position as mortgagee to drive an unfair bargain with the plaintiff, but acted solely upon the latter's initiative and at his express request, the presumption of fraud disappears and the case of the plaintiff is left without any foundation.

The first issue tendered by plaintiff was embraced by the issue which the court submitted. It was but one of the elements involved in that issue, and was not broad and comprehensive enough, when standing by itself, to be determinative. He had the full benefit of it under the issue submitted, which is sufficient. *Belding v. Archer,* 131 N. C., 287; *Ratliff v. Ratliff, ibid.,* 425; *Coal Co. v. Ice Co.,* 134 N. C., 577; *Grocery Co. v. R. R.,* 136 N. C., 396; *Deaver v. Deaver,* 137 N. C., 240; *Hatcher v. Dabbs,* 133 N. C., 239. As to the second issue he tendered, the record shows conclusively that the amount due to Moore was admitted, and the issue was, therefore, immaterial.

The court could not have given the instructions requested by the plaintiff without passing upon the facts. The whole inquiry was directed to the validity of the transaction of 6 September, 1905, when the 687-acre tract was reconveyed and plaintiff received a deed for the smaller tract at his request, and the rental value of the mill and farm since that time, referred to in the third issue tendered by plaintiff and in his prayers for instruction, was an immaterial fact, for the jury having found that the transaction was valid, the defendant, B. M. Moore, was entitled to the rents, it being his own land.

We do not perceive any error in the other rulings to which exceptions were taken.

No error.